Filed 11/8/21  In re A.O. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re A.O. et al., Persons Coming Under the Juvenile Court Law. | B313351 (Los Angeles County Super. Ct. Nos. CK65234E–G) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>G.G.,<br><br>        Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Pete R. Navarro, Judge Pro Tempore.  Affirmed.

William Hook, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Navid Nakhjavani, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

In this juvenile dependency appeal, G.G. (mother) challenges the juvenile court's order summarily denying her Welfare and Institutions Code section 388 petition for modification.  Mother argues she presented sufficient evidence warranting a hearing on her petition.  We disagree and affirm.

## BACKGROUND

### 1.    The Family

Mother has six children with E.O. (father).  Although in late 2016 when the underlying proceedings began, all six children were involved in the case, this appeal involves only the three youngest children—two sons, one of whom was 10 years old when the case began (older son) while the other was eight years old (youngest son), and one daughter, who was nine years old when the case began (daughter).

### 2.    Previous Dependency Proceedings

The family is no stranger to the dependency system.  Prior to the current proceedings, and dating back to 2004, over 50 referrals regarding the family had been made to the Los Angeles County Department of Children and Family Services (Department).  During that time, the juvenile court sustained two separate Welfare and Institutions Code section 300 petitions

2

involving the family.[1]  In 2006, the juvenile court sustained a section 300 petition as to the children's half sister (finding mother had physically abused her) but dismissed the petition as to mother and father's four oldest children (their younger children had not yet been born).  The family received reunification services and although mother and father eventually reunited with their children, mother did not reunite with her daughter, the children's half sister.  The juvenile court granted sole physical and legal custody of the half sister to her father.

In 2009, the juvenile court sustained a second section 300 petition, finding mother and father engaged in domestic violence, father physically abused the two oldest sons, and mother failed to protect the two oldest sons.  The juvenile court removed the children from their parents' custody and ordered family reunification services.  After one year, the juvenile court terminated reunification services and ordered the children's placements be kept confidential from their parents.  Nonetheless, seven months later, the juvenile court granted mother's and father's separately filed section 388 petitions and reinstated reunification services for the family.  Mother's services included individual therapy, couples therapy, and family therapy.  The family reunited and, in late 2012, the juvenile court terminated its jurisdiction.

3. **Current Proceedings**

In March 2017, the Department filed another section 300 petition on behalf of the children, which petition the Department amended in September 2017 (petition).  On November 20, 2017, the juvenile court sustained the petition as amended and

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

declared the children dependents of the court. The sustained allegations of the petition stated the children were at risk of serious physical harm due to the parents' inability to care for the mental and emotional health of the three oldest children, domestic violence between the parents, and failure to protect the oldest daughter from sexual abuse by an uncle. The juvenile court ordered family reunification services for the parents. Mother was ordered to participate in a domestic violence support group for victims, parenting classes, and individual counseling. She was granted monitored visits with the children.

### a. Termination of Reunification Services

One year later, the juvenile court found mother's compliance with her case plan had been insufficient. On December 3, 2018, the court terminated mother's reunification services. In May 2019, the juvenile court also terminated father's reunification services and set the case for a permanency planning hearing. Mother continued to have monitored visits with the children.

### b. Post-Reunification Period

By the end of 2019, mother's visits with the children had been inconsistent. Mother did not visit the children between the end of April and beginning of August 2019. The parents told the children the Department was denying them visits when in fact the parents refused to visit unless all the children were transported together to the Department's Torrance office (the children's placements were not in the Torrance area). In addition, mother's behavior during visits was inappropriate. For example, she asked why the children did not want to call her on a regular basis. At times, daughter avoided mother during visits and sometimes the youngest son's behavior deteriorated after

4

visits. Also, at some point, the parents bought cell phones for the children through which the parents contacted the children and discussed the dependency case, all of which violated court orders.

In November 2019, the Department reported the children were doing well in their respective foster placements. Daughter and the two younger sons each had been assigned a court-appointed special advocate (CASA), who met with their assigned minor monthly and helped to facilitate sibling visits. Nonetheless, the Department noted the "parents continue to ask that the children be moved [to different placements] even though the children are safe and thriving in their current placements."

In January 2020, the CASA for daughter and the CASA for youngest son each submitted a report for the court. Daughter's CASA reported daughter (then 12 years old) recently had stated she wished "to remain in foster placement rather than go home to her Mother." Although previously daughter had indicated she wanted to return to mother's care, daughter stated she " 'understands now' that her parents don't always do the right thing and that she should stay where she is doing the best." She said she was "happy and feels stable and well taken care of in her foster placement . . . she does not want to go home." Daughter used her pocket money to buy gifts for her foster mother. The CASA for the youngest son reported the child (then 11 years old) was doing very well in his foster placement. However, his visits with mother had been inconsistent and "led to confusion and outbursts . . . as they have not been positive experiences."

A few months later, the Department confirmed that the oldest daughter—who was at the time almost 18 years old and had eluded the Department for months—was in fact staying with mother and having unmonitored visits with father, all against

court orders.  The Department noted this demonstrated the parents had "very little regard for [the] court's orders and the well-being of their children."

In May 2020, the Department submitted a report for the court.  The Department reported that although mother recently had been visiting consistently with the children, the onset of the pandemic and California's "Safer at Home" regulations required mother's visits to transition to video calls.  In addition, it was reported daughter had become resistant to visiting with mother and often refused to attend the video calls.  Mother believed a Department social worker and daughter's foster mother were " 'brainwashing' " daughter or intentionally hiding something from mother.  The Department also reported the children did not always want to have telephone calls with their parents, stating, "Throughout the entirety of this open case, the foster parents have all reported difficulty in having the children make regular phone calls with their parents.  [Mother] files complaints with the Board of Supervisors or the [Department social worker] about these calls not being made enough.  Despite constant efforts by the [social worker] and the foster parents to encourage the children to call their mother on a regular basis, the foster parents continue to report that phone calls are a challenge."

The Department also reported the children were doing well in their foster placements and had "formed healthy attachments to the caregivers and their families."  Although the children stated they were happy and well cared for in their placements, their parents "continue[d] to ask that the children be moved" and "when the children voice[d] their feelings to their parents, the parents accuse[d] the children of being brainwashed and ungrateful."  Daughter's foster mother indicated she would

6

consider legal guardianship for daughter but the parents' visits were "an impediment to the family considering whether to provide permanency." The youngest son's foster mother reported she continued to see a decline in the child's behavior after he visited with his parents. The Department noted, "Despite the length of this open case, the parents have not been able to take any accountability for actions and how these actions impact their children."

### c.       Reduction in Mother's Visitation

In late 2020, the Department sought to reduce mother's court-ordered visitation with the children. The Department filed an ex parte application and section 388 petition asking the juvenile court to change its visitation order for mother from two visits a week for two hours to two visits a month for two hours. The Department explained that for approximately five months in mid-2020 mother did not visit with her youngest son or daughter, sometimes because mother did not request a visit and other times because daughter and the youngest son did not want to participate in a visit with mother.[2] During that time, daughter and the youngest son "focused on their services and treatment and appeared to be stabilized despite the pandemic's restrictions." The Department stated, "It appears that distance between visits and contact with their mother helped stabilize their routine and deterred the mother from having as much [of] an emotional impact on the children as she usually has."

Beginning in September 2020, however, mother began visiting in person with the children again and the Department

---

[2] The Department's application does not discuss the older son. It is unclear whether mother visited him during the same time period.

and the children's foster families began to see negative changes in the children's behavior.  For example, daughter expressed suicidal thoughts and was briefly hospitalized, both daughter and the youngest son cursed at a Department social worker (which reportedly was out of character for them), and daughter refused both therapeutic services and meetings with her therapist and psychiatrist.  The Department reported that, during visits, the children appeared more interested in receiving money from mother than visiting with her, and mother showed a disregard for court orders, rules and guidelines by, for example, discussing the case with the children.  In late October 2020, daughter's therapist identified " 'contact with family' " as a stressor for daughter.  The youngest son's foster mother reported "notable changes in [the child's] behavior since in person visits with Mother . . . resumed."

The Department also reported the children's contact with mother disrupted their foster placements.  Daughter's foster mother stated after daughter restarted communication with mother and the oldest daughter (now an adult), daughter began making false accusations against the foster mother.  As a result, daughter's foster mother requested a change of placement for daughter and daughter was removed from her foster home.  The Department noted this was the third time a foster parent had wanted "to keep [daughter], but could no longer due to the mother's interference."  Previously, daughter "admitted to purposefully sabotaging [an earlier] placement after being encouraged by her mother to make false accusations."  After being moved a third time, daughter expressed anger with "mother and her sister for putting her in this situation."  Similarly, the youngest son's caregivers, with whom he had lived for three years, indicated they were not interested in adoption in

part because of mother's "pattern of behavior in reporting on the caregivers' allegations of abuse that were unfounded."  "[T]he possibility of visits being decreased or terminated have helped Foster Parent . . . reconsider having the [youngest son] remain under her care and custody."

The Department believed the children's contact with mother and their oldest sister was "having a negative impact on the children's safety and stability, specifically with [daughter]." The Department claimed "the frequent contact that the children have with their mother on a weekly basis is detrimental to their stability and emotional well-being as the children struggle between choosing their mother's or their caregiver's sides." Daughter's CASA similarly reported she had "long felt [daughter's] Mother has interfered with her permanent stability" and "there is nothing of value being added to [daughter's] life through contact with her Mother."  The youngest son's CASA asked that visits with mother be temporarily suspended until his placement was stabilized.

On January 4, 2021, after holding a hearing on the Department's request to decrease mother's visitation, the juvenile court granted the Department's section 388 petition.  The court reduced mother's visits to "phone contact every other week for 30 minutes per visit."

### d.    Mother's Section 388 Petition

Two months later, on March 5, 2021, Mother filed a section 388 petition, asking the juvenile court to modify its December 2018 order terminating her reunification services.  Specifically, mother sought "in-person visit[s] and more family reunification services."  In her petition, mother stated she completed her case

plan and continued "to make progress with my therapist on case issues." She also stated she had a stable job and housing.

Mother included with her petition a January 29, 2021 letter from her therapist. In his letter, the therapist noted he had met with mother 25 times since May 2019 and mother had never missed an appointment with him. He stated mother had completed her treatment goals, which he listed as resolving issues related to anxiety and having her children in foster care, developing "effective interactional skills with her children and heal[ing] fractures in those relationships," providing a stable living environment for her and her children, learning "boundary-setting techniques," and further understanding domestic violence and how to protect her children from it. The therapist explained mother had maintained both consistent employment for no less than two years as well as a stable home environment. He said mother's "parental strengths have increased" and she was "excited about the possibility of resuming her parental role and is only experiencing a little anxiety about the return of her children." Mother's therapist recommended that mother "begin a reunification process with her children and . . . have a designated number of family sessions with them while in foster care to strengthen the bond between herself and the children. Coparenting sessions might also be a consideration."

The Department urged the juvenile court to deny mother's section 388 petition. The Department stated mother had "yet to alleviate the issues that brought her and her family to the attention of the Department." Among other things, the Department noted, "During in-person visits, Mother would negatively influence [the children] to lie about their caregivers causing the children to be replaced from foster home to foster

10

home. Mother having in-person visits prevents the children from reaching permanency. For example, [the older son] stated, 'What? That my mom is a bad influence? That she would tell [the youngest son] to say things that weren't really happening? Yeah, she did all that.'" The Department also explained daughter and the youngest son "no longer want to participate in visits with [mother]. Children have expressed they do not want to see Mother. [The youngest son] has been able to express that visits negatively affect his mood." The youngest son's CASA also reported, since mother's visitation had been reduced, the youngest son often declined to participate in phone visits with her and "[b]oth his behavior and his relationship with [his foster mom] and family [have] improved."

On March 22, 2021, the juvenile court held a hearing to determine whether mother's section 388 petition warranted a hearing on the merits. At the hearing, counsel for mother stated mother had "been working on her issues in individual counseling" and argued it would be "in the best interest of [the children] to reunify with their family." On the other hand, counsel for the children argued mother's section 388 petition failed to present prima facie evidence warranting a hearing on the merits. Counsel stated, "Mother's circumstances are changing at best" and claimed the requested modification would not be in the children's best interests. Counsel for the children noted the children did "not want to visit their mother and they are ambivalent about seeing her at best." Counsel for the Department also argued mother failed to present prima facie evidence warranting a hearing on the merits. In addition, the Department noted the proceedings were "far past reunification" and the proper focus was the children's permanence. Finally, the

11

children's CASA's believed it was not in the children's best interests to resume reunification services with mother or to disrupt the relative stability they were experiencing.

After hearing counsels' statements, the court denied mother's section 388 petition without a hearing on the merits, finding both that mother had not internalized or benefited from therapeutic tools she had learned during therapy and it was not in the children's best interests to grant a hearing on the petition.

**4.     Appeal**

Mother appealed the juvenile court's March 22, 2021 order.

## DISCUSSION

Mother argues the juvenile court erred when it summarily denied her section 388 petition without holding a hearing on the merits. Mother claims the court should have granted a hearing on her section 388 petition because she made a prima facie showing both of changed circumstances and that the requested modification would be in the children's best interest. As discussed below, we find no error.

**1.     Applicable Law and Standard of Review**

"After the termination of reunification services, the parents' interest in the care, custody and companionship of the child are no longer paramount. Rather, at this point 'the focus shifts to the needs of the child for permanency and stability.' " (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317.) " 'The burden thereafter is on the parent to prove changed circumstances pursuant to section 388 to revive the reunification issue. Section 388 provides the "escape mechanism" that . . . must be built into the process to allow the court to consider new information.' " (*In re Zacharia D.* (1993) 6 Cal.4th 435, 447.) "Even after the focus has shifted from reunification, the scheme provides a means for

12

the court to address a legitimate change of circumstances while protecting the child's need for prompt resolution of his custody status." (*In re Marilyn H.* (1993) 5 Cal.4th 295, 309.)  Thus, "after reunification services have terminated, a parent's [section 388] petition for either an order returning custody or reopening reunification efforts must establish how such a change will advance the child's need for permanency and stability." (*In re J.C.* (2014) 226 Cal.App.4th 503, 527.)  The parent's best interests "are simply no longer the focus." (*Ibid.*)

The juvenile court is not required to hold a full hearing on a section 388 petition.  "The parent seeking modification must 'make a prima facie showing to trigger the right to proceed by way of a full hearing.  [Citation.]'  [Citations.]  There are two parts to the prima facie showing:  The parent must demonstrate (1) a genuine change of circumstances or new evidence, and that (2) revoking the previous order would be in the best interests of the children.  [Citation.]  If the liberally construed allegations of the petition do not show changed circumstances such that the child's best interests will be promoted by the proposed change of order, the dependency court need not order a hearing." (*In re Anthony W.* (2001) 87 Cal.App.4th 246, 250.)

"We review the juvenile court's summary denial of a section 388 petition for abuse of discretion." (*In re Anthony W.*, *supra*, 87 Cal.App.4th at p. 250.)  " ' "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason.  When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." ' " (*In re Stephanie M.*, *supra*, 7 Cal.4th at pp. 318–319.)

13

## 2.     No Abuse of Discretion

We conclude mother failed to make a prima facie showing of either changed circumstances or that the requested modification would be in the children's best interests.

First, at best mother's petition shows changing circumstances rather than a "genuine change" of circumstances. Certainly, mother took appropriate and laudable steps by meeting consistently with her therapist for close to two years. Nonetheless, mother's conduct during that same time period belies her claim of changed circumstances and, in particular, her claim she gained "tremendous" and "significant insight into the family's problems." The record reveals mother did not use tools and strategies learned in therapy during visits—whether in person or otherwise—with her children. Despite years of therapy, mother continued negatively to influence her children by, for example, pressuring them to make false accusations against, or otherwise behave poorly with, their foster families. As the juvenile court stated, mother had been unable "to benefit [from] or internalize any of [the] therapeutic tools" she learned. Mother failed to present prima facie evidence of changed circumstances.

Second, mother failed to demonstrate her requested modification would be in the children's best interests. Repeatedly over the course of these proceedings, including recently, the children suffered emotionally and their behavior deteriorated after visits with mother. Moreover, it is undisputed the children's various foster parents were dissuaded from offering long-term stability to the children because of mother's interference. Clearly, visits with mother interfered with the children's stability and foster placement. Although mother

14

claims that was "a previous version of" herself, we are not persuaded. As the juvenile court explained, "Finally, the kids are in a place where they're stable, they're not stressed out, they're not in a place that causes them anxieties and uncertainties." Although mother claims the children would derive "some benefit" from increased visits in a therapeutic setting, even if true, this is not prima facie evidence that the requested change would be in the children's best interests.

The record does not support mother's claims of either changed circumstances or best interests. A section 388 petition "which alleges merely changing circumstances and would mean delaying the selection of a permanent home for a child to see if a parent, who has repeatedly failed to reunify with the child, might be able to reunify at some future point, does not promote stability for the child or the child's best interests." (*In re Casey D.* (1999) 70 Cal.App.4th 38, 47, disapproved on other grounds as stated in *In re Caden C.* (2021) 11 Cal.5th 614, 636, fn. 5.) This case is distinguishable from those relied on by mother and, therefore, we are not persuaded by them. We conclude the juvenile court did not abuse its discretion in summarily denying mother's section 388 petition.

**DISPOSITION**

The March 22, 2021 order is affirmed.

NOT TO BE PUBLISHED.

LUI, P. J.

We concur:

CHAVEZ, J.

HOFFSTADT, J.